Okay, the next argued case is number 16-1262, TQP Development LLC against Newegg, Inc. We have an appeal and cross appeal. We'll start with Mr. Fenster. Good morning, your honors. May it please the court. Because neither party challenges either the claim construction or the jury charge, we have to test the jury verdict, the substantial evidence against the verdict against the charge that was actually given using the ordinary meaning. The infringement verdict should be reinstated because substantial evidence supports the verdict using the ordinary meaning of the charge actually given. The charge was, a new key value in the first and second sequence is used each time a predetermined number of blocks have been sent from the transmitter over the communication link. That's at A4645. Dr. Jager testified directly to that point at A3397-98. The blocks, I'm quoting, the blocks now have been sent from the transmitter over the communication link, so the predetermined number of blocks is satisfied. The key value now in the first and second sequence is used when the predetermined number of blocks have been sent from the transmitter over the communication link. We have a series of cases where we have said that while a trial court can't post-trial add new limitations to its claim construction, it certainly has the authority to clarify its claim construction. How do you get around our decisions in Cordes and Mformation and WLAN where we specifically said that that's authorized? So first, the court didn't purport to clarify its claim construction in this case. The court simply misapplied it. The court in its JMAL said it was applying the court's claim construction in the jury charge. However, the JMAL focused on the wrong, it misapplied, misquoted the jury charge. It focused on whether there was substantial evidence of whether there was generation at the transmitter or receiver, the generation of keys versus each time a key, a data block was received. Well, he did use the word generation a few times, but he came back around and made it clear that he was talking about the use. I disagree, Your Honor. He specifically says in the JMAL order at 16 that the court's conclusion is centered on the lack of substantial evidence showing a direct causal link between the generation of a new key and either transmission or receipt, and then three other places on page A-16, the court always compares to the generation. That is directly contrary to the district court's claim construction. Now, that I think led him to overlook substantial evidence. The key point that he overlooked- Why do you think it's contrary to his construction? Because the court's claim construction at specifically held, otherwise it's specifically rejected- have been sent from the transmitter. So he is only giving life and meaning to what he meant by his timing requirement in the construction that this occurs after something has been sent. Your Honor, at 841 of the record, which is the court's claim construction, the court in the claim construction order specifically addressed whether produce means generate or use, and the court specifically rejected defendant's argument that produce means generate. He said nothing in the 730 patent precludes generating a sequence in advance and then using the keys at an appropriate time. Well, that had to do with whether or not they could be stored. That didn't have to do with whether or not that they had to be used at the time they were sent. That's right. So what he said, what the claim construction was that was applied and should have been applied on de novo by this court is that the new key value has to be used each time a predetermined number of blocks have been sent. And Dr. Yeager testified exactly that, that a new key value is used at the receiver each time a new block has been transmitted. That new key value, this is at 3397 and 3398, he testified to that directly. He further said that because the sequences at the transmitter and the receiver are identical, the key value is, that's used at the receiver, is in the first and second sequence. So reviewing de novo, you have to apply the ordinary meaning of the charge actually given. But there was nothing in that charge that even implied that the key values could be used after transmission. The key values had to be used before transmission, right? Okay. No. The key values are used at the transmitter. So this is a method of transmitting from transmitter to receiver. At the transmitter side, the keys are used to encrypt prior to transmission. Then encrypted data is sent to the receiver and the received encrypted data is counted and advanced keys are used at the receiver to decrypt it. I don't understand why you, I mean, I feel like this receiver centric thing is completely out of the blue as far as I can tell. I mean, yes, it sort of gives you a basis to make substantial evidence arguments with regard to your expert, but the plain text expressly requires action at the transmitter through the use of said first and second, said second sequences being produced. You've wanted to change the perspective to receiver centric to then be able to point to your expert and say, see, he justified this. There's a substantial evidence. That's, I feel like this is claim construction. You want the world to be receiver centric. That's not what the district court construed the claim as. Okay. So first the court's claim construction doesn't say at the receiver or at the transmitter. It says a new key value in the first and second sequence is used. Okay. But wait, let's look at the language of the claim, which both judges were looking at. A new one of said key values is said first and said second sequences being produced each time a predetermined number of said blocks are transmitted over said link. Yes. So why is it that the new key value can not show up until the receiver side? The key value. So first, this is in paragraph one E of the claim, which is talking about what happens at the receiver. Okay. And if you look at the prosecution history, I can explain how this element got into this claim. But the way this claim is structured is you provide a seed to both sides. In one C, you generate a first sequence at the transmitter. It says at the transmitter. In one D, you encrypt at the transmitter. In one E, you generate a second sequence at said receiver. You decrypt at said receiver. And then the key language that was added by amendment is a new one of said key values in said first and second sequences being produced each time a predetermined number of blocks are transmitted over said link. It doesn't say at the transmitter or the receiver. I note to the court that that is in the block that's talking about what happens at the receiver. The court's construction said a new key value in the first and second sequence is used each time a predetermined number of blocks have been set. It does not say at the transmitter. It does not say at the receiver. Now looking grammatically at it because we have to apply only the ordinary meaning of the actual charge given. Grammatically, what that sentence means is a new key value is used. Do you doubt at this point in the proceeding that the district court rejected your receiver-centric view of the claim construction for 1E with regard to this? You do? I do. Really? Because I think the opinion seems very clear that he made it clear that it was at transmission and that that's what he was looking at. And in fact, that's what the claim language says are transmitted over said link. So while some portions of 1E might have to do with actions that occur at the receiver, this, i.e. when you're going to have a new one of said key values is after or at transmitted basically. So that's the way I interpret his opinion. I really see all of your arguments as claim construction arguments. Okay, so first I'll refer the court to footnote 4 of the court's JMAL at A15 where he specifically says he's not resolving the question. The court therefore does not determine whether either interpretation is solely correct or whether the claim supports both interpretations. He specifically left it open. This court should not be doing claim construction. I'm asking you to apply only the ordinary meaning of the claim language as charged and the plain meaning of the charge was a new key value is used. That key value is in the first and at trial. It was clear that you thought the plain meaning was A and your opponent thought it was B. And so the court gave you an opportunity to seek a clarification of the claim construction during trial and you specifically chose not to do that. Isn't that right? The court, both sides objected to either side's interpretation. Either side's expert testifying in a way that they believed was inconsistent. The court at A3827 specifically says this is an issue for the jury. All right, counsel, the court understands that different experts may have different reading of the court's claim construction. That doesn't mean I'm going to reopen claim construction. You both have experts. If your witnesses can explain why the other's explanation is faulty, that's what this trial is about. Okay, so the court recognized that this was an issue and said it should go to the jury. It was Newegg that requested a supplemental construction. We were fine with the construction. They objected to the construction saying you need a different construction. The court rejected the supplemental construction. They moved for a new trial for failure to give the supplemental instruction. That's not on appeal anymore. Now they're changing their tune saying, oh, the claim construction always meant this. The way this claim is structured is there's action at the transmitter and then action at the receiver. We have to focus on the actual claim language, the actual charge, and if they're drawing all inferences in favor, if the substantial evidence supports it, the verdict should be reinstated. Okay, the claim construction that was given to the jury was a new value is used. That new value is in the first and second sequence. It doesn't say at the transmitter. It doesn't say at the receiver. It just says that the new value is in the first and second sequence. Dr. Yeager testified that in RC4 in the accused systems, the value used at the receiver is in the first and second sequence because it's symmetric, because it has to be the same key value that's used to decrypt the block that was used to encrypt the block. So when we look at the actual ordinary language of the instruction that was actually given, it is a block or a new key value is used each time predetermined number of blocks has been transmitted. Dr. Yeager testified and showed that that's exactly the case. Substantial evidence supports that. If in fact we were to believe that the trial court's clarification of its claim construction, and I'm going to use that word for now, but if we believe that the claim construction that showed up at the JMO is the correct one, do you agree that there was an absence of evidence to support that construction? That claim construction would be erroneous and I'll explain why. Assuming we don't think it was erroneous, would there be evidence to support it? I'm not sure exactly what it is because there was no clarification set forth in the JMO. So if you ask, if the timing aspect that you're complaining about was correct, so if it requires that the next key value is not used at the transmitter to encrypt a block until after an encrypted block has been sent, then I'm not sure that substantial evidence supports that. Here's why that claim construction is wrong. I'll let you get there because you've already told us why you think it's wrong. But my point is, if that had been a clear claim construction from the very beginning, would this have been a circumstance where you would have had to stipulate to non-infringement and send it up here to challenge the claim construction? The reason I'm not sure is there may be situations. This was not in evidence at trial. In discovery, if we had known about this, there may be situations where they are sent one block at a time. If there's only one block to send, it would be rare. So I don't know the answer in general. Because I mean I thought it was undisputed that the way that the allegedly infringing system works is that it was all collectively. It is undisputed that units are sent in packets when there are packets to send. There may be situations where a packet was so small that it was one block. I don't know that. I think it doesn't matter. So one, the court should not do claim construction because neither party appealed claim construction. But here's why that claim construction is wrong. But once you decided mid-trial that this was a dispute between you, couldn't you have asked that question of their expert or one of their witnesses? Does it ever happen? Could it possibly happen where one block is sent at a time? So it's probably a question that could be asked. I generally don't ask questions I don't know the answer to of opposing experts at trial. And under our view of the claim construction as it existed, it was not and it was an irrelevant question. Can I tell you why the claim construction would be wrong? The claim construction would be wrong because it's inconsistent with the claims and inconsistent with the specification in a way that would exclude the preferred embodiments. So look at what we're doing. So if you look at figure one, figure one shows that there's a block counter. The data source comes in, there's a block counter. The block counter sends an advanced signal to the pseudo random number generator. At column three, it explains how this is working. And what it explains is that an advanced signal from the block counter at the transmitter is what is used to advance the keys. That happens prior to coming back to the transmitter or the pseudo random generator in the transmitter of whether blocks have been sent, have been transmitted, have been received. There is no feedback, no teaching of that. The only teaching at the transmitter side is that advanced signal from the block counter that happens prior to transmission. And so it's inconsistent with the specification to read that limitation in the receiver section as applying to... I don't understand how this section relates to what occurs when a block is sent. This goes to the caveat that the magistrate judge put on the claim construction in the it can be generated, advanced, and stored. I don't think so. So if you look at... So if I can take you to the claim, one C says you generate a first sequence of pseudo random key values at the transmitter. Then it says each new key value at the transmitter is produced at a time dependent on a predetermined characteristic of the data being transmitted over the link. So one C tells you that you have to produce the new key value to encrypt the next block of data each time this predetermined characteristic is met at the transmitter. The specification describes that's based on the advanced signal from the block counter prior to transmission. There is no feedback. There's nothing disclosed in the specification that teaches advancing the key value at the transmitter only after a block has been transmitted over the link that has left the transmitter. Okay, to move on. All right, let's hear from the other side and we'll save you a little time. Thank you, Your Honor. Mr. Breen. Yes, thank you, Your Honor. May it please the court. We agree with TQP's position that the facts are not disputed here. The district court was correct on that point. We also agree that claim construction isn't properly before the court now. We would disagree that TQP is not arguing claim construction. I think it's very clear that they are trying to in a number of ways that they were not concerned. Well, what about the fact that you actually asked for a supplemental claim construction and then said you were entitled to a new trial because you didn't get that supplemental claim construction? Doesn't that imply that the claim construction that went to the jury was missing something? I know that's TQP's position on what happened. I think the context really is that we were looking for a curative instruction from the district court at that point in time because prior to that bench conference we had been struggling with the fact that Dr. Jager had been offering testimony that was inconsistent with the claim construction as it already existed. Much of the testimony concerned his position that it referred to actions at the receiver only. He was implying that all that that claim requirement involved was the usage of the same key at the receiver that was used at some point earlier in the transmitter. Both of those, our view was, directly contradicted the key, I should say not key, but the core requirements of the construction that have this causal relationship between using a new key and the act of transmission over the communication link. We asked the district court to fix that, make sure that the jury understood that this isn't something just about the receiver and it requires more than just using the same key at one end or the other. So we believe the construction as applied to the district court post-trial was consistent with what it meant all along. The plain meaning in our view is quite clear. The claim language itself cues the action of switching to a new key off of the act of transmission. The construction emphasizes that characteristic and the specification is very emphatic about the setting in which this method would be used involved a stream of data. And if you look at the background of the patent that the district court discusses in the Markman order, it's 839 through 41, we're talking about a stream of data blocks going across the communication link. And what mattered for purposes of this key management system in the method was that both the transmitter and the receiver knew at what point along that stream of data switch from one key to the other. So as Mr. Fenster pointed out, the use of a block counter to monitor that data as it exited and transmitted over the communication link was the most important aspect of that, so that the transmitter and receiver would know not at the same time to switch the key, but at the same location along that data. Do you believe in the Jamal order in your favor that the district court modified or changed his earlier construction? No, that's not our position. What about the whole generation thing, because that's really problematic. He should have used the word used and not generated. Is that just a simple mistake on his part? Because earlier he did issue a construction about I'm not adopting the generation argument. Well, yes, but I think that clarification about generation versus use was in a different setting. When you say that clarification, I guess my issue to you is did he clarify in the Jamal order his earlier construction? Did he change it? Did he modify it? No, I would answer no to that question. The clarification I meant, Your Honor, was in the original construction where there was a distinction drawn between the act of transmitting and other steps that would be predicate to the encryption followed by the transmitting. The issue of generation, I mean, I agree the district court did use that word a handful of times. And you wish he didn't, I'm sure, because it makes your case a little sloppier looking, because now do you defend his use of the word generation, or do you say he really meant used? I think he meant used, and I think the rest of the district court's opinion is very clear that Judge Gilstrap understood the issue. The key issue here, the core issue, was that there is a temporal requirement that triggers the usage based on transmission. He discussed the construction in a number of places. He did refer to use elsewhere. It was just an imprecise and unfortunate. Yeah, unfortunate is good on a number of levels here. Why, I'm actually a little confused by the response to the debate that was joined at trial. I mean, it had to have been pretty obvious that you all thought the construction meant one thing and they thought it meant something else. It's the court's job to clarify that construction. Why would the trial court, or do you understand why the trial court said that's a question for the jury? Well, I think the main reason for that is that this discussion had happened before we'd even the opportunity to cross-examine TQP's expert on the issue. So, given that this was being raised well before trial was even halfway done, the district court wanted to see if this was an issue that actually required intervention or not. And you don't think it was? Given that their expert was allowed to testify and you were allowed to cross-examine them on the notion that this can all be viewed receiver side and meet the claim limitations as construed? Well, I mean, our view was that the district court... No, your view is you wanted him to fix it in advance and he didn't. And now you're telling me you don't think he did anything different in the J-Mall either, i.e. fixed it, elaborated on it, expanded it, clarified it, whatever. And it's kind of confusing and, you know, now you're standing here defending the fact that he didn't fix something that throughout you've asked him to fix because you saw this problem coming with the expert being allowed to testify on something that was not within the way you viewed the claims. Well, I don't think it's unfair to characterize what happened in the J-Mall order as a clarification, but I agree with Judge O'Malley's earlier point that there's nothing wrong with that. Our view, though, is that the construction was clear on this point and what we were trying to do during trial was... Where was it clear on this point? And if it was so clear, why wouldn't he have excluded the testimony of the expert, which clearly is to the contrary of what you assert the clear claim construction to be and what he seems to have said it is in the J-Mall order. So where is it clear in the actual pre-J-Mall order construction? Sure. I think it's very clear. It says a new key value in the first and second sequence is used each time a predetermined number of blocks have been sent from the transmitter. So a couple of things that are very clear about that. One is the first and second sequence derive antecedent basis earlier in the claim. One is at said transmitter and the other is at said receiver. So the idea of this receiver-centric view that TQP now advances on appeal was directly contradicted by the claim construction as it existed at the time. But one of them is at the transmitter, one's at the receiver. So your transmitter-centric view would be equally subject to criticism under that logic. Well, I wouldn't say... And then it sort of sounds like a fact question that maybe should have been left to the jury if that's your argument. Well, you know, we don't have a transmitter or receiver-centric view. The claim clearly requires both. We only needed to show that one of them was not satisfied to demonstrate there was no literal infringement in this case. And the claim language was clear that it required actions in both sequences. I mean, what TQP is arguing is that because the contents of those sequences are the same, because they have to have the same key values in them, that that's all that is used. But because we're talking about monitoring a steady stream of data and finding where in the location of that stream to make the key change, it really matters a great deal to have actions taking place in both sequences at both locations at the appropriate time based on that predetermined characteristic. Let me ask you something that I had talked with your opponent on the other side about or your friend on the other side about, and that is the question of if in fact this is the construction that we all understood all along, is there any conceivable mechanism by which your devices could infringe? If this being the one as characterized in the JMAL, this is the one that stands? No, no, and certainly nothing that TQP ever argued. Well, you say there's no substantial evidence in the record, and we'll accept the fact that the trial court reached that conclusion based on the claim construction as he understood it. My question is, had TQP understood that to be the claim construction all along, could they have put on a different case? Oh, I think the answer is no, because RC4 works on a one byte to one encryption key basis. So TQP had to take the position that the predetermined number of blocks that triggers the switch is one, and there is no evidence that during trial, as he's discussed a moment ago, that would switch, I'm sorry, that would transmit one byte at a time. There's simply no evidence of that, and I think an argument along those lines has been long since waived. I mean, so basically, in my mind, the fundamental difference between the 730 patent and what the new egg system does is the 730 patent triggers the change based on an act of transmission. The modern system triggers the encryption change based on the previous act of encryption, and that's how we end up with our en masse encryption activity, then a transmission, and then an en masse decryption activity. So the very act that triggers the switch is an entirely different point in the cycle of communication back and forth between these devices. So under any construction, the one that was given to the jury, or as if we call it a that the predetermined number of blocks is one. Can I ask you a question about your cross-appeal? Is it correct, do I understand it correctly, that it is just an alternative argument if you were to prevail on the JMAL of no infringement, then we would not be deciding the validity question? Yes, that's correct, Your Honor. One more point. Back to Judge O'Malley had a discussion with Mr. Fenster about generation. I just want to indicate that we agree that the discussion about generation and the patent that was being referred to had to do much more with the buffering concept of preparing a store of key values that could be used at some time in the future. Our non-infringement position was never based on the timing of the key generation, but as given the construction, the timing of the usage of those keys. So any sort of buffering activity would be fine and doesn't really touch on the core issue that's in front of the court with this construction as it was given. So the buffering issue is fine with us. It doesn't really change our position one way or the other. Also, at the end of the day, I think what TQP offers as substantial evidence is no more than Dr. Jaeger offering his conclusory assertion that the claim requirements have been met. I think when you look at what the parties understood the technology to be and what the correct claim construction actually is, that doesn't get TQP nearly far enough to support a jury verdict of infringement. Dr. Jaeger later conceded on cross-examination the fundamental difference between the RC4 one byte at a time and mass encryption and transmission, distinguishing that from what is done in the patent that monitors a stream of data and does the block counting as Mr. Fenster described. If the court has no further questions about non-infringement, we're happy to yield our appeal. Do you want to talk about the cross appeal or rely on the briefs? If the court has no questions, we'll rely on the briefs for that. Okay. Thank you. Okay. Thank you, Mr. Breen. Okay, Mr. Fenster, let's put three minutes for rebuttal and just on the main appeal then. Your Honor, three points. First, yours is a de novo review. Don't get bogged down in the JMAL order. Yours is a JMAL review and you should be applying the actual charge as given. The ordinary meaning of the actual charge does not say at the transmitter. It says a new key value is used each time a predetermined value has been sent. Doesn't say at the transmitter, doesn't say at the receiver. It just requires that it's a new key value in first and second sequence. Newegg would have you rewrite that as a new key value in the first sequence is used at the transmitter each time and a new key value is used in the second sequence at the receiver each time. That's not what it says. It says a new key value, singular, is used singular where that new key value is in the first and second sequence. Your de novo job is to compare the evidence to that language, the plain language of that charge, and Your Honors, I submit that the evidence is more than substantial to show that Dr. Yeager testified exactly that, that each time a predetermined number of blocks is received, a new key value is used. He testified that the new key value that's used at the receiver is in the first and second sequence. That is the jury question. Whether a new key value that's used at the receiver each time a predetermined number of blocks have been sent, that key value being in the first and second sequence, whether that meets that limitation. That was the jury question. That was the substantial evidence. Drawing all inferences in favor of the verdict as you must, that substantial evidence requires reinstatement of the verdict of infringement. The substantial evidence that shows besides that 3397 and 98, Dr. Yeager's testimony was not at all conclusory. He testified that the block of data, this is at 3292, the block of data is the second sequence to be produced. He testified that RC4 encrypts each block of data with a new key, that's at 3284. He testified that the new aid system has a method for tracking the number of blocks and that that's integrated into the RC4 algorithm, that's at 3335. He testified that he applied the court's claim construction. He testified that the second pseudorandom number generator is used and both transmitter and the receiver receive the same seed. He gave backup to justify his interpretation and his conclusion and his testimony, his evidence, that a new key value is used at the receiver each time a block, the predetermined number of blocks, has been received, have been sent, and that that new key value is in the first and second sequence. Okay, we need to move on. We have the argument. I think we're repeating ourselves. Thank you both. The case is taken under submission. Take the cross appeal on the briefs. Thank you.